Thomas A. MENNELLA, Plaintiff,

v.

OFFICE OF COURT ADMINISTRATION, E. Leo Milonas, individually and as Chief Administrative Judge of the Unified Court System of the State of New York, Barry A. Cozier, individually and as Deputy Chief Administrative Judge of the Unified Court System of the State of New York for the New York City Courts, Jonathan Lippman, individually and as Deputy Chief Administrator for Management Support of the Unified Court System of the State of New York, "John Doe" and "Jane Doe" whose names are presently unknown to the plaintiff and who are agents, employees, assistants and persons acting in concert or cooperation with the defendants Milonas, Cozier, and Lippman, Defendants.

No. CV 95–5281.

United States District Court, E.D. New York.

Aug. 25, 1996.

Thomas L. Menella, Valley Stream, NY, pro se.

Michael Colodner, Office of Court Administration, New York City by Raymond S. Hack, Assistant Deputy Counsel, for defendants.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This action was commenced by the plaintiff *pro se* Thomas L. Mennella on December 26, 1995, seeking injunctive relief and money damages pursuant to 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). The complaint names the following defendants: Office of Court Administration, E. Leo Milonas, individually and as Chief Administrative Judge of the Unified Court System of the State of New York, Barry A. Cozier, individually and as Deputy Chief Administrative Judge of the Unified Court System of the State of New York for the New York City Courts, Jonathan Lippman, individually and as Deputy Chief Administrator for Management Support of the Unified Court System of the State of New York, "John Doe" and "Jane Doe" whose names are presently unknown to the plaintiff and who are agents, employees, assistants and persons acting in concert or cooperation with the defendants Milonas, Cozier, and Lippman.

Presently before the Court is a motion by the defendants for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c).

## I. BACKGROUND

### A. *A prior related action*

The defendants argue that principles of res judicata bar the present action and entitle them to a judgment on the pleadings. The defendants refer to a prior action commenced in the Eastern District of New York by Thomas L. Mennella on June 24, 1994, which was dismissed in an Order dated October 27, 1994 by the Hon. I. Leo Glasser. The plaintiff appealed from Judge Glasser's Order, which was affirmed by the Second Circuit on July 26, 1995. The defendants in this action plead the affirmative defense of res judicata in their answer to the complaint. The defendants annex to their answer in this action, copies of the following documents: (1) the complaint in CV 94–3024 (ILG); (2) the Memorandum and Order dated October 27, 1994 in CV 94–3024 (ILG); and (3) the Second Circuit Summary Order dated July 26, 1995. The defendants here, who were also the named defendants in CV 94–3024 (ILG), contend that principles of res judicata bar the present action.

In the Decision and Order dated October 27, 1994, Judge Glasser stated the following,

For the purpose of this motion to dismiss, the following facts are accepted as true. Mennnella is an employee of the Unified Court System of the State of New York (hereinafter referred to as the Office of Court Administration, or "OCA"). Mennella was assigned to the position of deputy chief clerk of the criminal term of the Supreme Court, Kings County on or about January 1, 1991.

Defendants Milonas, Lippman and Cozier are named individually and in their respective positions as Chief Administrative Judge, Deputy Chief Administrative Judge and Deputy Chief Administrator for Management Support of the OCA. The Complaint also names as defendants "John Doe" and "Jane Doe," persons whose

names are otherwise unknown to plaintiff, as "agents, employees, assistants and persons acting in cooperation with" the named defendants.

In June 1993, Mennella filed an application for the promotion to the position of Court Clerk Specialist for the Supreme Court, Second Judicial Department, Kings County. Menella was interviewed for the position by a panel, in accordance with the procedures of the OCA, and was one of the three nominees whose names were submitted for the position. The panel, in making its recommendations, ranked Mennella first. Defendant Milonas was notified of the recommendations of the interview panel on or about July 14, 1993.

Subsequent to July 15, 1993, defendants Milonas and Lippman, "through their agents, assistants and employees" questioned female employees at the Supreme Court Courthouse, Kings County, as to whether they were ever sexually harassed by Mennella. Mennella was interviewed by defendants, Milonas and Lippman on or about April 11, 1994, and by defendant Cozier and Joseph J. Trafficanti, the Deputy Chief Administrative Judge for courts outside New York City, on or about March 2, 1994. Mennella alleges that this second interview was contrary to the rules, regulations and procedures of the OCA. The second ranked nominee for the position of Court Clerk Specialist was thereafter chosen for the position. Mennella was transferred from the criminal part of the Supreme Court to the civil part. Mennella states, on information and belief, that the reason given by defendants for their choice was that the plaintiff did not project the right "image."

Mennella brought this action, claiming a due process violation of the fifth and fourteenth amendments of the United States Constitution and 42 U.S.C. § 1983.

Memorandum and Order of Judge Glasser dated October 27, 1996, at 1–3.

### B. *The present complaint*

As in the prior action, the complaint in this case alleges a due process violation of the Fifth and Fourteenth amendments of the United States Constitution and 42 U.S.C. § 1983. In addition, the present complaint sets forth claims of employment discrimination and retaliation pursuant to Title VII and the ADEA. The present complaint names those defendants who were named in CV 94–3024 (ILG) and also names the Office Of Court Administration, the agency for which the defendants Milonas, Lippman, Cozier serve in their official capacities.

The present complaint alleges that Mennella was assigned as "acting deputy chief clerk" of the criminal term of the Supreme Court, Kings County on January 1, 1991 and received the highest performance ratings from the then Administrative Judge of the Second Department, the Hon. Ronald J. Aiello. The complaint further alleges that on June 2, 1993, OCA posted an employment opportunity for Court Clerk Specialist for the Supreme Court Second Judicial Department, Kings County (JS–30). According to the complaint Mennella applied for the position, was interviewed by a panel in accordance with uniform procedures and was recommended as the first ranked candidate to then Deputy Chief Administrative Judge for the New York City Courts, Milton L. Williams, who in turn recommended Mennella for the position in question to the defendant Milonas.

The complaint alleges that the defendants Milonas and Lippman "orchestrated through the agents, assistants and or employees a witch-hunt investigation concerning sexual harassment charges alleged to have been committed by the plaintiff upon female employees employed at the Supreme Court Courthouse at 360 Adams Street." This is also alleged in the complaint in the plaintiff's prior action, CV 94–3024. The plaintiff also presently alleges that he was not informed about a sexual harassment complaint and states "on information and belief" that the investigation was a pretext for denying him the promotion he sought. It is further alleged that the position of Court Clerk Specialist was given to the person who was the second ranked nominee, a person "much younger than the plaintiff, who at the time was 52 years of age." The complaint states that "the only reason offered by defendant Milonas, Cozier and Lippman for their deci-

sion was that the plaintiff failed to project the right image."

The complaint states that the plaintiff submitted a complaint, claiming violations of the ADEA and Title VII, to the EEOC on or about April 29, 1994, and received a right to sue letter on or about September 25, 1995. Annexed to the complaint are copies of the plaintiff's EEOC complaint, claiming violations of the ADEA and Title VII, and the EEOC right to sue notice dated September 25, 1995. The right to sue letter concerns the Age Discrimination in Employment Act claim only.

The Court notes that the factual allegations in the present complaint are substantially the same as the factual allegations in the complaint in CV 94–3024 (ILG), except that the present complaint alleges that the person hired for the position that the plaintiff sought was a "much younger" person.

## II. DISCUSSION

### A. *Standard of review*

#### I. *self representation*

■ In addressing the defendants' motion, the Court is mindful that the plaintiff is proceeding *pro se* and that his submissions "must be 'liberally construed' in favor of the plaintiff[ ] and held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972)); *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit his rights by virtue of his lack of legal training. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). But the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Id.* (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

In this regard the Court notes that Mennella's present complaint is clear, well written and comprehensible. Its factual allegations closely track those set forth in the complaint in CV 94–3024 (ILG), in which action the plaintiff was represented by counsel.

As to the present motion, the plaintiff was served with the defendants' moving papers on July 12, 1996, and was further advised in a letter from the Court dated July 26, 1996 that the return date of the motion was August 16, 1996. However, the plaintiff did not submit papers in opposition to the motion.

#### ii. *Fed.R.Civ.P. 12(c)*

■ Judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). In considering a motion for a judgment on the pleadings, the Court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences in favor of the non-movant. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir.1994). Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which could entitle the plaintiff to relief, the court cannot grant a defendant's motion for a judgement on the pleadings. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994) (when deciding a Rule 12(c) motion, the court applies the same standard as that applicable to a 12(b)(6) motion).

It is within this framework that the Court reviews the defendant's motion pursuant to Rule 12(c).

### B. *Res judicata*

■ The defendants argue that the plaintiff's earlier action, CV 94–3024, which was dismissed on the merits and affirmed on appeal, operates to bar any subsequent action against the same parties based on the same events.

■ Res judicata or claim preclusion simply means that when a judgment is rendered on the merits, it bars a second suit between the same parties or their privies based on the same cause of action or claims.

*See, e.g., U.S. v. Alcan Aluminum,* 990 F.2d 711 (2d Cir.1993). For purposes of res judicata, a dismissal pursuant to Rule 12(b)(6) is an adjudication on the merits. *Nowak v. Ironworkers,* 81 F.3d 1182 (2d Cir.1996) (citing *Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir.1976), *modified on other grounds,* 726 F.2d 930 (2d Cir.1984), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984)). Under New York's transactional approach to res judicata, claims arising out of the same factual grouping are deemed to be part of the same cause of action and any later claim will be barred, where the initial forum had the power to award the full measure of relief sought in the later litigation. *Antonsen v. Ward,* 943 F.2d 198 (2d Cir.1991). As clearly indicated by the comparison of the present complaint and the prior complaint, noted above, the claims in the pending complaint claims arise out of the same transactions or occurrences as the claims in the prior CV 94–3024 complaint.

■ "A final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or *could have been raised in that action.*" *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (emphasis supplied). The Second Circuit has commented:

> Res judicata thus not only bars parties from relitigating the same cause of action, but also "prevents litigation of a matter that *could have been raised and decided in a previous suit, whether or not it was raised.*" *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir.1985). [emphasis supplied]

*Harborside Refrigerated Services, Inc. v. Vogel,* 959 F.2d 368, 372 (2d Cir.1992). The Second Circuit stated that where a plaintiff claimed in subsequent actions that the same adverse employment action violated the Labor Management Relations Act and Title VII, the district court correctly determined that the actions involved the "the same transaction, and therefore the same cause of action, for res judicata purposes." *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 39 (2d Cir. 1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993). In *Woods,* the court stated:

> It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which Woods chose to frame her complaint. *See Berlitz Sch. of Languages of Am., Inc. v. Everest House* 619 F.2d 211, 215 (2d Cir. 1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of *res judicata.*"); *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *see also* Restatement (Second) of Judgments § 24(b) & Comments; .... Thus, it is abundantly clear that the two actions involved the same cause of action for res judicata purposes.

*Id.* at 39.

Although the plaintiff did not submit papers in opposition to this motion, the Court notes that the file contains a letter from the plaintiff to United States Magistrate Judge Michael L. Orenstein, dated May 21, 1996, in which the plaintiff comments on the defendants' res judicata theory as follows:

> As any first year law student knows, in a criminal action a defendant can be charged with multiple counts of murder with but one *corpus delecti;* any pre-law student knows that a discrimination and retaliation claim *cannot* be *res judicata* to a due process, section 1983 claim, each based on an identical set of facts. I stopped counting at 50, during sheppardizing [sic] of separate, parallel due process and discrimination claims.

May 21, 1996 Letter from Thomas L. Mennella to United States Magistrate Judge Michael L. Orenstein, at 1. The plaintiff did not identify any cases in support of his contentions.

In the Court's view the plaintiff's comment regarding multiple criminal counts against one defendant is not relevant to the present issue. However, the Court presumes that with regard to retaliation claims, the plaintiff refers to a situation in which a party commences an action under Title VII claiming that he was retaliated against for having

sought redress for prior allegedly unlawful conduct by an employer.

Title VII prohibits retaliatory treatment of employees for opposing alleged discriminatory practices. 42 U.S.C. § 2000e–3 provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

*Id.* The prima facie elements of a retaliation claim are (1) participation by the plaintiff in an activity protected under Title VII; (2) awareness by the employer of the plaintiff's participation in that activity; (3) an adverse employment action against the employee based on his activity; and (4) a causal connection between the plaintiff's protected activity and the adverse employment action. *See e.g., Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993). Such a retaliation claim would not be barred by a plaintiff's earlier complaint because the retaliation claim is based on subsequent conduct by the employer.

However, the plaintiff in this case does not allege that the defendants failed to promote him based on the fact that he sought redress in the earlier action before Judge Glasser. Rather, the employment discrimination claims in this action are based on the same event that formed the factual predicate for his earlier law suit. Specifically, both suits arise from the plaintiff's unsuccessful bid to be promoted to the position of Court Clerk Specialist for the Supreme Court, Second Judicial Department, Kings County (JG–30), which he applied for in July, 1993 and was denied in April, 1994. The prior action alleged violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth constitutional amendments. The present suit sets forth the same theory for relief (42 U.S.C. § 1983 and the Fifth and Fourteenth constitutional amendments) and in addition states that the defendants' conduct was unlawful under Title VII and the ADEA. The only additional fact alleged in the second action is that the person hired by the defendants to serve as Court Clerk Specialist was "much younger" than the plaintiff. Both the present law suit and the prior action sought to remedy the same alleged wrongful conduct, namely the defendants failure to promote the plaintiff to the position for which he applied.

The plaintiff received notice from the EEOC of the right to sue on the ADEA claim on September 25, 1995, after his prior Section 1983 action was dismissed. However, this chronology does not alter the applicability of res judicata principles to the present action. In *Woods v. Dunlop Tire Corp., supra,* the Second Circuit held that a plaintiff's action under the Labor Management Relations Act served to bar a subsequent action under Title VII because both claims centered around the termination of the plaintiff's employment. *Woods, supra,* 972 F.2d 36. In *Woods,* the plaintiff filed charges against her former employer with the EEOC. While the EEOC administrative proceedings were still pending, the plaintiff commenced an action under the Labor Management Relations Act prior to expiration of that statute's six month limitation period. The district court granted summary judgment to the defendants in the LMRA action. Two years later, the EEOC concluded its administrative procedure and issued a right to sue letter to the plaintiff, who then filed an action against her employer under Title VII claiming race and gender discrimination. The district court granted summary judgment to the defendant employer on the basis of res judicata. The plaintiff appealed arguing that "a Title VII plaintiff has the right to a full administrative review prior to instituting a lawsuit, which in this case could not be completed in time to join the Title VII claim with the LMRA claim." *Id.* at 38.

The Second Circuit rejected this theory and noted that the plaintiff could have preserved her Title VII claims in one of two ways after commencing the LMRA action by (1) seeking a stay of the LMRA action pending the outcome of the EEOC proceedings; or (2) seeking a right to sue notice on the Title VII claim from the EEOC after 180 days and amending the complaint in the

LMRA action to include the Title VII claim. *Id.* at 41. The Second Circuit described these alternatives as "minimal steps necessary to preserve each claim independently." *Id.*

In the Court's view, the plaintiff, then represented by counsel, could have raised the Title VII and ADEA claims in the prior action in this district, a forum that clearly had the power to award the full measure of relief he sought. Furthermore, the Court is satisfied that there were no "formal barriers" to the plaintiff's asserting the claims in the prior Eastern District action that would make preclusion of a second action unfair. *See Antonsen, supra,* 943 F.2d at 201. Accordingly, the principles of res judicata serve to bar the present law suit, which is predicated on the same events that formed the factual basis of the plaintiff's prior action, CV 94–3024, which was dismissed on the merits and affirmed on appeal.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendants' motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), is granted; and it is further

**ORDERED,** that the complaint in this action is dismissed in its entirety.

The Clerk of the Court is advised that this Order closes the case.

**SO ORDERED.**