Harold BERNSTEIN, Plaintiff,

v.

HOSIERY MANUFACTURING CORPO-
RATION OF MORGANTON, INC., Her-
bert N. Somekh Family Trust I, Herbert
Somekh and Chemical Bank, Defen-
dants.

No. CV 94–1120 (ADS).

United States District Court,
E.D. New York.

April 15, 1994.

Paul, Weiss, Rifkind, Wharton & Garrison by Allan J. Arfa, Dina Gerber Huebner, Roberta Kaplan, New York City, for plaintiff.

Strook & Strook & Lavan by Brian M. Cogan, William A. Rome, New York City, for defendant Chemical Bank.

Schlam Stone & Dolan by Richard H. Dolan, New York City, and Barry E. Schulman, Brooklyn, NY, for defendants Hosiery Mfg. Corp. of Morganton, Inc., Herbert N. Somekh Family Trust I, and Herbert Somekh.

## OPINION AND ORDER

SPATT, District Judge:

The plaintiff Harold Bernstein ("Bernstein") has brought this diversity action to enforce a judgment obtained in the New York State Supreme Court, New York County against the defendant Herbert Somekh ("Somekh"). The plaintiff alleges that Somekh and the other defendants have engaged in a scheme to make Somekh judgment-proof by transferring his assets to the other defendants. To halt this alleged scheme and prevent any further dissipation of the Somekh assets available to satisfy his judgment, Bernstein moves for the Court to enjoin the defendants from transferring any of their property, or in the case of the defendant Chemical Bank from transferring any property pledged to it by Somekh, except in satisfaction of Bernstein's judgment.

The defendants oppose the motion, and cross-move for this Court to decline jurisdiction pursuant to the abstention doctrine set forth in *Colorado River Water Conservation*

*District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

## BACKGROUND

This case arises from failed partnerships between the plaintiff and Somekh. Bernstein, his late brother Raymond Bernstein and Somekh formed a variety of general and limited partnerships to finance real estate ventures around the country. According to Bernstein, Somekh looted, misappropriated, and wrongfully diverted partnership assets for his personal use, causing Bernstein to infuse extra funds into the partnerships. Allegedly, Somekh used partnership funds to pay off his personal debt, and the debt of his own independent partnerships and corporations. Bernstein claims that when various creditors sued the partnerships on outstanding debts, Somekh refused to pay his share of the partnership debts.

Because each of the partners had executed personal guarantees of the partnerships' debt, Bernstein and his brother's estate were personally liable for the partnership debts. In the suits by the creditors, the Bernsteins paid the debts to the creditor, and became subrogated to the creditor's right to recover Somekh's portion of the debt. For example, Citibank was owed $4 million by the partnerships, and sued the partnership and the partners individually in Florida state court. Bernstein's son and sister-in-law paid the Citibank debt, and sued Somekh in the New York State Supreme, Nassau County for $1.5 million, which allegedly represents Somekh's share of the partnership debt owed to Citibank.

The present action stems from a suit against the partnership brought by the creditor Fleet Bank in the N.Y. Supreme Court, New York County. Fleet was owed $2.5 million by the partnerships. Bernstein paid Fleet, and in turn sued Somekh to recover his share of the debt. Judgment was entered in Bernstein's favor on April 21, 1993 in the sum of $865,671 plus interest. *See Harold Bernstein, successor-in-interest to Fleet bank (f/k/a Norstar Bank) v. Bernstein, Bernstein & Somekh, Harold P. Bernstein and Herbert Somekh*, No. 30692/92 (Sup.Ct. N.Y.Co. April 12, 1993) (Justice Shainswit).

It is this judgment which Bernstein seeks to preserve and enforce in the present case.

### 1. *Bernstein's Enforcement Efforts.*

Bernstein contends that he has been unsuccessful in enforcing the judgment he obtained in the New York State Supreme Court because Somekh has "engaged in a massive scheme to conceal his assets." According to the plaintiff, this scheme is evidenced by (i) Somekh's use of the defendants Hosiery Manufacturing Corporation of Morganton, Inc. ("Hosiery") and the Herbert N. Somekh Family Trust I ("Trust")—allegedly Somekh's alter-egos—to hide personal assets, (ii) fraudulent conveyances of Somekh's property to Hosiery and the Family Trust, and (iii) participating in a scheme with Chemical Bank to grossly over-collateralize a $6 million personal loan obligation by providing Chemical with $10 million in pledges of virtually all of Somekh's and Hosiery's assets.

Bernstein's enforcement efforts are varied. One effort to enforce the judgment has been to initiate supplementary proceedings before the same court that issued the judgment. In this respect, Bernstein has resorted to the enforcement procedures available under New York Civil Practice Law and Rules ("CPLR") Article 52. These procedures include issuing restraining notices, subpoenas, and seeking installment orders against Somekh. The most recent order in that proceeding by Justice Shainswit was entered on March 15, 1994, in which the state court denied Somekh's motion to stay or dismiss the action, and granted Bernstein's cross-motion for an installment order pursuant to New York CPLR § 5226. The installment order, however, awaits a referee's report and recommendation regarding the amount of monetary benefits Somekh receives from his family and Hosiery. Bernstein has also served restraining notices pursuant to CPLR § 5222 on the Somekhs and Chemical Bank, has served Chemical Bank with subpoenas, and has undertaken depositions and other discovery against Chemical.

Bernstein also sought enforcement of his judgment in Oklahoma, where he was successful in obtaining an order from an Oklahoma state court authorizing the sale of So-

mekh's partnership interests in Oklahoma which were pledged to Chemical. That sale was conducted on February 28, 1994, but was stayed pending appeal by Somekh to the Oklahoma Supreme Court. On April 4, 1994, the Oklahoma Supreme Court assumed jurisdiction for purposes of dissolving the stay, and allowed the sale to proceed on April 25, 1994.

In a related enforcement action in the New York State Supreme Court, Nassau County, Bernstein's son and sister-in-law, who had paid Citibank in the Florida suit by Citibank, were granted summary judgment in their enforcement suit against Somekh on May 24, 1993. *Jay and Selma Bernstein v. Herbert and Denise Somekh*, No. 17305/92 (Sup.Ct.Nassau Co.) (Justice Goldstein). In the Supreme Court Nassau County case Somekh commenced a third party proceeding against his other two partners, for the winding up and final accounting of the partnerships. A receiver was appointed to wind up the affairs of the partnerships, and an accounting hearing was scheduled to take place on April 11, 1994. In this case the court also issued a temporary restraining order against the Somekhs in February 1993, enjoining them from transferring any of their property, as well as restraining notices against the Somekhs and Chemical Bank.

The Court notes that there are two other related suits in the New York Supreme Court, Nassau County. In the first case, Hosiery has sued Bernstein on a note involving Bernstein's purchase of two limited properties. In the second, Somekh has sued his former partners on a promissory note involving one of the Oklahoma limited partnerships.

### 2. *The Chemical Bank Action.*

Like the other bank creditors of the partnerships, Chemical bank has sued Bernstein, the Somekhs and the estate of Raymond Bernstein on personal guarantees they executed in connection with Chemical loans to the partnership. *Chemical Bank v. Harold Bernstein, et al.*, No. 123037/93 (Sup.Ct. N.Y.Co. September, 1993). Bernstein has asserted counterclaims against Chemical and cross-claims against Hosiery and Somekh in

that action, alleging that Chemical and Somekh have plotted to tie up all of Somekh's and Hosiery's assets by pledging them to Chemical, in order to make the assets unavailable to judgment creditors like Bernstein.

Bernstein alleges that a $6 million loan to Chemical was oversecured by Somekh's pledging more than $10 million of his and Hosiery's assets—certain notes, bonds, works of art, stock in a cooperative apartment, and leases in a number of factories—to Chemical. Moreover, Bernstein alleges that Hosiery is Somekh's alter-ego, and that Somekh has made fraudulent conveyances of his assets to Hosiery. Significantly, these counterclaims and cross-claims are the same claims asserted against Chemical, Somekh and Hosiery in the present suit by Bernstein.

### THE PLAINTIFF'S COMPLAINT

In the Complaint in the present action, the plaintiff alleges that he has been unsuccessful in enforcing the judgment against Somekh, because of a massive scheme on the part of the defendants to conceal Somekh's assets.

With respect to the defendant Hosiery, the plaintiff alleges that Hosiery is Somekh's alter ego, because it is totally dominated and controlled by Somekh. For example, Bernstein alleges that: (1) Somekh operates Hosiery out of his Manhasset home, and the company's address and phone number are the same as Somekh's; (2) the company does not have a certificate to do business in New York; (3) Somekh makes all the corporate decisions and writes all the checks; (4) neither Somekh's wife, the only other officer of Hosiery, nor his daughters, the other shareholders, have any role in the corporation; (5) Hosiery has no full time employees and does not distribute dividends; (6) Somekh uses his own bank accounts and Hosiery's interchangeably, and pays for personal expenses such as credit card, phone, and country club bills with checks drawn against Hosiery; and (7) Somekh borrows funds personally, and guarantees the loan with Hosiery assets as collateral.

With respect to the defendant Family Trust, the plaintiff alleges that Somekh's wife is supposedly the trustee, but has no knowl-

edge of the affairs of the trust. Moreover, Somekh has allegedly admitted that he could obtain $1.7 million from the Family Trust if needed.

Bernstein also alleges that in 1991 and 1992 Somekh made fraudulent conveyances of virtually all of the assets in his name to Hosiery and the Family Trust with the clear intent of removing property from his own name in an effort to hinder his creditors. These conveyances include: (1) transferring to Hosiery all of the proceeds Somekh personally received from the sale of a television station in Davenport, Iowa owned through a partnership. The price of the transfer was $10, yet Somekh had indicated in April, 1990 the value of his interest in this partnership was $2.7 million; (2) transferring to Hosiery 53 works of art worth $1.8 million for $10; (3) transferring real property in Chester, Pennsylvania to the Family Trust for $1; (4) transferring to the Family Trust his interest in a Manhattan real estate partnership for $10, when his share is worth $800,000; (5) causing Hosiery to transfer to the Family Trust a building in San Francisco worth $1 million for no specific consideration.

With respect to the defendant Chemical Bank, the plaintiff alleges that in early 1993, Somekh owed Chemical $6 million on various personal loans. In an attempt to shelter all of Somekh's his assets against his creditors, Bernstein claims Somekh and Chemical engaged in a scheme whereby Somekh and Hosiery grossly oversecured Somekh's outstanding personal debt to Chemical by pledging $10 million of Somekh's and Hosiery's assets to Chemical as security for the loans. Included in this collateral are certain notes, bonds, works of art, leases on factories in Hosiery's name, a coop apartment in Manhattan, and Somekh's interests in various limited partnerships he participated in with the plaintiff. Bernstein alleges Chemical executed this pledge knowing that notices of restraint had been entered against Somekh.

By bringing the present action, the plaintiff seeks for the Court to (1) order Hosiery and the Family Trust to make their assets available to satisfy Bernstein's judgment, (2) set aside the various alleged fraudulent conveyances that the plaintiff has been able to uncover, and (3) order Chemical to liquidate or otherwise make available to the plaintiff the collateral pledged by Somekh that is in excess of the balance due on Somekh's personal loan. The Complaint sets forth eight causes of action against Somekh, Hosiery, the Family Trust and Chemical Bank, as follows:

The first and second causes of action allege, respectively that Somekh completely dominates and controls Hosiery and the Family Trust. As a result of such domination, the plaintiff requests that the Court should declare that Hosiery and the family Trust are Somekh's alter egos, and require Hosiery and the Trust to pay sufficient funds to satisfy the plaintiff's judgment.

The third through seventh causes of action allege that the transfers by Somekh to Hosiery of the television station and artwork, and of the certain real property to the Family Trust and Hosiery constitute fraudulent conveyances under various sections of the New York Debtor & Creditor Law. The plaintiff requests that the Court should declare these transfers to be fraudulent, and therefore null and void. As a result of such a declaration, title or interest in the property transferred would revert back to Somekh, and could be conveyed to the plaintiff to satisfy his judgment.

The eighth cause of action alleges that Chemical Bank has in its possession or controls at least $5 million or $6 million of collateral in excess of the $5.5 million balance due on Somekh's personal loan, and that sufficient funds exist for Somekh to satisfy his loan obligations to Chemical Bank and the plaintiff's judgment. According to the plaintiff, Chemical has the duty of marshalling Somekh's assets and applying the collateral in a manner that ensures satisfaction of both of Somekh's debts. The plaintiff requests that the Court direct Chemical to either liquidate all of the collateral in its possession so that both debts could be satisfied, or to release sufficient collateral in excess of Somekh's loan obligation to Chemical, so that the plaintiff's judgment can be satisfied.

In addition to the declaratory relief sought, the plaintiff also seeks costs and attorneys fees, compensatory and punitive damages, and preliminary and permanent injunctive relief enjoining Hosiery and the Family Trust from transferring in any way their property except to satisfy the plaintiff's judgment. Injunctive relief is also sought against Chemical Bank, to the extent that it may not transfer any of its property in which Somekh, Hosiery or the Family Trust have an interest, despite any such property being pledged, except to satisfy the judgment.

## PRESENT MOTION BEFORE THE COURT

The plaintiff moves for the Court to grant preliminary injunctive relief on its behalf. Specifically, the plaintiff moves that the Court enter an order, pending final resolution of this action: (1) enjoining Hosiery from transferring any of its property, except in satisfaction of the judgment held by Bernstein; (2) enjoining the Family Trust from transferring any of its property, except in satisfaction of the judgment held by Bernstein; and (3) enjoining Chemical Bank from transferring to itself or any other person any property in which Hosiery, the Family Trust or Somekh have an interest, whether or not such property is pledged to Chemical, except in satisfaction of the judgment held by Bernstein.

The plaintiff claims that he is entitled to injunctive relief because he has satisfied the two-pronged test for such relief set forth in *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). Bernstein contends that he is likely to succeed on the merits of this action, because of the complete lack of separate corporate identities or formalities of Hosiery and the Family Trust, and the fraudulent nature of the conveyances to those entities by Somekh. Bernstein claims the fraudulent nature of the conveyances is allegedly evidenced by the fact that (i) they were made without fair consideration and rendered Somekh insolvent, (ii) they were made without fair consideration at a time when Somekh was a defendant in actions brought by the Bernsteins to satisfy judgments, and (iii) they were made

with the intent to hinder, delay and defraud the Bernsteins as creditors.

Bernstein contends he has met the second prong for injunctive relief, because he is threatened with irreparable harm in that the further dissipation of Hosiery's and the Family Trust's assets will prevent Bernstein from ever recovering on his judgment.

The defendants dispute the plaintiff's contentions, and cross-move for the Court to decline jurisdiction by abstaining from adjudicating this case under the abstention doctrine set forth in *Colorado River Water Conservation District v. United States* and its progeny. Essentially, the defendants argue that there are parallel state proceedings in which they and the plaintiff are parties, and where the issues presented to this Court have been, or can be, raised by the plaintiff. According to the defendants, a consideration of the six abstention factors under *Colorado River* militates in favor of this Court's abstaining in this case.

## DISCUSSION

1. *The Colorado River Abstention Doctrine.*

■ "Abstention from the exercise of federal jurisdiction is the narrow exception, not the rule," and the federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River*, 424 U.S. at 813–14, 817, 96 S.Ct. at 1244, 1246. Despite this "unflagging obligation" to exercise jurisdiction, the Supreme Court in *Colorado River* held that abstention by a federal court may be proper in a case where there are parallel state proceedings due to "considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.*, at 1246, 96 S.Ct. at 1246 (quoted case omitted).

However, because the cases where *Colorado River* abstention is applicable do not involve issues of constitutional interpretation or federal-state relations, abstention under *Colorado River* is "considerably more limited" than in circumstances warranting abstention under the various other federal abstention doctrines, where such constitutional and federalism questions are involved. *Id.*

■ In sum, abstention under *Colorado River* is prudential, and is left to the Court's discretion. *De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989); *Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 602 (2d Cir.1988). The mere fact of concurrent state and federal proceedings does not however, without more, warrant abstention. Nor does the mere pendency of an action in the state court bar proceedings concerning the same matter in the federal court having jurisdiction. *Colorado River,* 424 U.S. at 813–16, 96 S.Ct. at 1244–46; *Alliance of American Insurers,* 854 F.2d at 602.

■ Rather, "only the clearest of justifications," constituting "exceptional" circumstances, will warrant dismissal under this abstention doctrine. *Colorado River,* 424 U.S. at 819–20, 96 S.Ct. at 1247; *Alliance of American Insurers,* 854 F.2d at 603; *accord Sheerbonnet Ltd. v. American Express Bank Ltd.,* 17 F.3d 46 (2d Cir.1994). In order for a District Court to determine whether such "exceptional" circumstances warranting abstention exist, the Supreme Court has identified the following nonexhaustive list of six factors for the district court to consider: (1) assumption by federal or state court of jurisdiction over any res or property; (2) whether the federal forum is any less convenient to the parties than the state forum; (3) whether there is a danger of piecemeal litigation; (4) the order of the two suits; (5) whether federal law provides the rule of decision on the merits; and (6) whether the state court is inadequate to protect the plaintiff's rights. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 14, 103 S.Ct. 927, 938–41, 74 L.Ed.2d 765 (1983) (quoting *Colorado River*); *Alliance of American Insurers,* 854 F.2d at 602.

The decision to abstain because of a parallel state proceeding does not rest on mechanically checking to see whether the above factors apply or not. The district court must, instead,

> carefully balance the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from

case to case, depending on the particular setting of the case.

*Moses H. Cone Memorial Hospital,* 460 U.S. at 16, 103 S.Ct. at 937. Thus, in *Colorado River,* the danger of avoiding piecemeal adjudication of federal water rights was the principal factor cited by the Supreme Court in approving dismissal of the action by the district court. *Moses H. Cone Memorial Hospital,* 460 U.S. at 16, 103 S.Ct. at 937.

■ Finally, the presence of a federal claim as the basis of jurisdiction raises the level of justification needed for abstention. *Colorado River,* 424 U.S. at 815–16, 96 S.Ct. at 1245; *County of Suffolk v. LILCO,* 907 F.2d 1295, 1308 (2d Cir.1990).

Bernstein responds to the defendants' arguments in favor of abstention, by alleging that there are no parallel or duplicative state proceedings in this case which even warrant the Court's consideration of abstention under *Colorado River.* The plaintiff contends that (1) of the three actions cited by the defendant as being parallel, the Oklahoma action and the Supreme Court New York County proceedings before Justice Shainswit are not pending, and (2) there is no other proceeding pending in which the same claims that are raised here—concerning Hosiery and the Family Trust being Somekh's alter ego's, Somekh's fraudulent conveyances of his assets to Hosiery and the Family Trust, and Chemical Bank's being overcollateralized on Somekh's loan obligations—are being litigated.

Moreover, according to the plaintiff, even if there were a pending proceeding, a consideration of the six factors weighs in favor of not finding that exceptional circumstances exist that would warrant abstention.

■ The Court disagrees with the plaintiff. In this Court's view, there are both pending proceedings which parallel this action and which raise the same issues. Moreover, the danger of piecemeal litigation, with the attending risks of inconsistent judgments, is heightened in this case, where the plaintiff seeks to enforce his judgment in several different court actions at the same time.

In the pending action by Chemical Bank, *Chemical Bank v. Harold Bernstein, et al.,* Index No. 123037/93 (Sup.Ct.N.Y.Co. September, 1993), Bernstein has asserted counterclaims against Chemical and cross-claims against Hosiery and the Somekhs. These counterclaims and cross-claims allege the exact same issues as in this action, and Bernstein seeks the same relief with respect to these counterclaims and cross-claims that he seeks here. Paragraphs 71 to 82 of his counterclaims make the very same allegations against Chemical as in this action; namely that Chemical Bank and Somekh schemed to tie up Somekh's assets and prevent Bernstein from satisfying his judgment. The allegations in these counterclaims also list the same pledges of assets worth $10 million that Bernstein has listed in his Complaint in this action—the notes, bonds, art work, cooperative building and leases of factories—which allegedly overcollateralize Chemical for Somekh's $6 million outstanding personal loan.

In his counterclaim and crossclaim, Bernstein requests among other relief, that the court set aside all the pledges and other conveyances entered into among the Somekhs, Chemical and Hosiery. In the present action, Bernstein requests that Chemical liquidate or otherwise make available to the plaintiff the collateral pledged by Somekh that is in excess of the balance due on Somekh's personal loan.

Further, Bernstein raises several times in the counterclaims and cross-claims that Hosiery is Somekh's alter-ego, and alleges in Paragraphs 87–89 the same transactions alleged in this case to be fraudulent conveyances by Somekh to Hosiery and the Family Trust—the conveyances of the 53 works of art for $10 dollars to Hosiery and the conveyance of the San Francisco building and various factories to the Family Trust.

With respect to the enforcement proceedings before Justice Shainswit, *Harold Bernstein, successor-in-interest to Fleet bank (f/k/a Norstar Bank) v. Bernstein, Bernstein & Somekh, Harold P. Bernstein and Herbert Somekh,* Index No. 30692/92 (Sup.Ct. N.Y.Co.), the plaintiff contends that because he recovered a judgment in this case, there is nothing pending. The Court disagrees. Article 52 of the New York CPLR allows for "supplementary proceedings" to enforce money judgments. Such proceedings are currently pending before the same court that entered the plaintiff's judgment, and involve the very same judgment that the plaintiff is seeking to enforce here.

In the supplementary proceedings before Justice Shainswit, Bernstein has issued Restraint Notices against the Somekhs and Chemical Bank in order to preserve assets that could be used to satisfy his judgment. A hearing is scheduled at the end of April in conjunction with an installment order, which will review the amounts of payments Somekh receives from Hosiery and the Family Trust. Bernstein has also undertaken a significant amount of discovery in the course of these proceedings to enforce his judgment. The Court notes that Bernstein can also pursue a turnover proceeding for any property fraudulently conveyed by Somekh under CPLR § 5225, and that if any such assets have been spent, squandered or secreted, he can obtain a money judgment against the transferee. *See FDIC v. Heilbrun,* 167 A.D.2d 294, 562 N.Y.S.2d 35 (1st Dept.1990).

In the Court's view, these enforcement proceedings utilized by Bernstein involve the very same relief the plaintiff is seeking here with respect to the enforcement of his judgment, and would permit such relief insofar as they make available to Bernstein restraints on the transfers of property Somekh has any interest in, and turnover proceedings to reach property conveyed by Somekh to Chemical, Hosiery or the Family Trust. Moreover, the issues raised in these supplementary proceedings involve the same subject matter presently before this Court, as well as a number of other pending actions where the parties have brought their dispute.

The plaintiff further argues that the present action and the Chemical Bank action, and the present action and the enforcement proceedings before Justice Shainswit, are not parallel actions because the parties are not the same, and the plaintiff seeks different relief here—namely declarations that Hosiery and the Family Trust are alter-egos of Somekh, voiding the fraudulent conveyances, and requiring Chemical to marshall Somekh's

assets and liquidate the collateral to satisfy Bernsteins' judgment. The Court finds this argument to be unpersuasive.

First, the parties in all these actions are substantially the same persons. The parties in this action are Bernstein, Hosiery, Somekh, the Family Trust and Chemical. The parties in the Chemical action are Bernstein, Hosiery, the Somekhs and Chemical. All of the aforementioned parties are involved in the various enforcement proceedings before Justice Shainswit. Abstention under *Colorado River* does not require identical parties in the parallel actions. *See Arkwright–Boston Manufacturers Mutual v. City of New York*, 762 F.2d 205, 211 (2d Cir.1985) (abstention affirmed where federal action involved suit against city by insurance companies' subrogees, and state actions involved hundreds of suits by different plaintiffs against city); *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir.1979) ("A suit is 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.").

The case cited by the plaintiffs to support its argument of complete identity of parties, *Alliance of American Insurers· v. Cuomo, supra*, is inapposite. First, in that case the plaintiff in the state action was an association of insurers challenging a New York insurance law. The plaintiffs in the federal action were individual insurance companies challenging the same law. The Court noted that the association was distinct from its individual members. Because the association was not a participant in the federal action, and the individual insurers were not involved in the state action, the court held there was not an identity of the parties in the two cases, and denied abstention. *Accord Sheerbonnet, supra*, 17 F.3d at 50 (holding there is no identity of parties where the plaintiff in the federal action is not involved in the state proceeding, and the plaintiffs in the state proceeding are not involved in the federal action).

In the present case, the parties are involved in both the state and federal actions, and the interest of all of the parties in each action is the same.

Second, the federal and state actions at issue here are essentially the same, in that basically the same claims are raised by Bernstein and the same relief is sought against Somekh, Chemical and Hosiery. *See Telesco v. Telesco Fuel and Masons*, 765 F.2d 356, 362 (2d Cir.1985) (abstention warranted where essentially the same claims and same relief is sought in both actions). The fact that precisely the same claims are not made in the two proceedings, or that alternative forms of relief are sought in the two actions does not mean the actions are not duplicative or parallel. What matters is that the claims concern the same events, *Telesco, supra*, 765 F.2d at 362, and involve "sufficient overlap of subject matter," *Alliance of American Insurers*, 854 F.2d at 603. Indeed, even if the claims asserted in the two proceedings are not identical, if the state proceeding would permit adjudication of the claims asserted in the federal proceeding, the proceedings are parallel. *Telesco*, 765 F.2d at 362. *Accord Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175 (1942) (if the claims raised in the federal proceeding "could be satisfactorily adjudicated in [the state]· proceeding," abstention may be warranted).

Accordingly, the Court finds that the present action between the parties in this Court and the two state court proceedings—the Chemical Bank action and the proceedings before Justice Shainswit—are parallel proceedings. Moreover, in the Court's view, consideration of the factors for determining whether exceptional circumstances exist that warrant abstention weighs decidedly in favor of abstention.

The primary abstention factor implicated by the present case is the third factor: the danger of piecemeal litigation. There are at least two other pending proceedings dealing with the fraudulent transfer and secreting of asset claims Bernstein has raised against Chemical Bank, Somekh, Hosiery and the Family Trust. Each of the state proceedings affords the relief Bernstein seeks in this case. By seeking to enforce his judgment in this Court, the plaintiff has add-

ed one more iron to the fire in his quest to enforce his judgment, making the litigation even more piecemeal. As a result, the risk of "inconsistent and mutually contradictory determinations" has increased and multiplied. *See, e.g., De Cisneros, supra,* 871 F.2d at 308 (abstention warranted); *Arkwright–Boston, supra,* 762 F.2d at 211); *accord Moses H. Cone Memorial Hospital,* 460 U.S. at 16, 103 S.Ct. at 937 (danger of avoiding piecemeal litigation was paramount factor warranting abstention in *Colorado River* ). In the Court's view, the third factor weighs heavily in favor of abstention.

The Court also notes that the fourth factor, the order in which jurisdiction is obtained, also weighs in favor of abstention. A determination under this factor "does not rest with a race to the courthouse." Instead, "this factor is considered in a common-sense manner by examining how much progress has been made in each forum." *Arkwright–Boston, supra,* 762 F.2d at 211. The Court notes that the state court proceedings have been underway for quite some time, and have involved considerable discovery and motion practice. The federal proceeding on the other hand, has just been initiated. Further, the Court finds that there are no justifiable reasons for the parties to duplicate their efforts in the state courts before this court. *Accord De Cisneros, supra,* 871 F.2d at 308.

Moreover, this diversity case does not require a heightened justification for abstention, because there is no federal issue involved. All of the issues are governed exclusively by state law, and therefore the fifth factor, whether federal or state law provides the rule of decision, weighs in favor of abstention. *County of Suffolk v. LILCO, supra,* 907 F.2d at 1308; *De Cisneros, supra,* 871 F.2d at 308.

The sixth factor, the adequacy of the state proceedings to protect the plaintiff's rights, also favors abstention. Bernstein has apparently brought this action out of frustration with Somekh's efforts at hiding his assets. However, this frustration is not the result of the inadequacy of the state proceedings to protect Bernstein's rights, or to offer him relief in support of satisfying his judgment. Bernstein can raise all of the claims

he raises here before the state courts. Moreover, he can seek the very same declaratory and equitable relief he seeks in this case in the state proceedings, through his counter and cross claims in the Chemical Bank action and through the enforcement mechanisms provided by Article 52 of the New York CPLR, so that his claims can be "satisfactorily adjudicated in [the state] proceeding." *Brillhart v. Excess Ins. Co., supra,* 316 U.S. at 495, 62 S.Ct. at 1175.

Finally, the Court notes that in *Moses A. Cone Hospital,* the Supreme Court found considerable merit in the idea that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision" whether to abstain under *Colorado River. Moses A. Cone Hospital,* 460 U.S. at 18–19 n. 20, 103 S.Ct. at 938 n. 20. Indeed, the very case *Colorado River* was based on, *Brillhart v. Excess Ins. Co., supra,* made the same observation: "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. at 495, 62 S.Ct. at 1176. *Accord, Telesco,* 765 F.2d at 363.

If there is any case that is vexatious, reactive, and duplicative of state proceedings, it is this case. In addition, the motivation of the plaintiff to bring this totally duplicative federal diversity action is highly suspect as, in this Court's view, the federal court is being used as a means of further retaliation against these defendants, and as a tool for harassment.

Accordingly, the Court finds that there are exceptional circumstances that warrant the Court's dismissal of the case under the *Colorado River* abstention doctrine. The Court therefore, declines to exercise jurisdiction in this case, and the case is dismissed without prejudice.

The Clerk of the Court is advised that this action closes the case.

**SO ORDERED.**